UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

        -against-                                              S1 05 Crim. 0888 (LAK)

JEFFREY STEIN, et al.,

                                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        Defendant Ruble previously moved for an order granting a severance as to the trial of Counts Forty-one through Forty-four from the trial of the remaining counts in the indictment. DI 259. The Court denied that motion in April 2006. *United States v. Stein*, 428 F. Supp. 2d 138 (S.D.N.Y. 2006). Before the Court is a new motion by Ruble seeking to sever the trial of Counts Forty-one through Forty-four. DI 1320.

        Count One of the indictment (the "Conspiracy Count") charges 19 individuals, including Ruble, with conspiracy to defraud the IRS by designing, marketing, and implementing allegedly fraudulent tax shelters and deliberately concealing those shelters from the IRS. Counts Two through Forty charge all defendants with substantive tax evasion arising from the allegedly fraudulent tax shelter losses. Counts Forty-one through Forty-four (the "Ruble Evasion Counts") charge Ruble with evasion of his personal income taxes for the years 1998-2001 in violation of 26 U.S.C. § 7201. Two of these counts name defendants Larson and Pfaff as well.

        In its opposition to Ruble's first motion to sever, the government argued that the Ruble Evasion Counts were properly joined with the other charges "because the taxes that were evaded stem directly and exclusively from income paid to Ruble based on his involvement in the underlying conspiracy to defraud." DI 346, at 58. According to the government, the indictment alleges and the evidence at trial will show that Ruble received side payments for his role in the conspiracy and that those payments constituted unreported compensation in the tax years charged in the Ruble Evasion Counts. *Id.* at 57 (describing ¶¶ 52-53 of the indictment as alleging that Ruble did not report to the IRS a portion of "side payments" he received "in exchange for the false and fraudulent opinion letters Ruble provided for the fraudulent tax shelter transactions"); *id.* at 60 ("The proof at trial will demonstrate that . . . the unreported side payments were made by co-conspirators . . . to Ruble in order to cause Ruble to produce an essential tool wielded by the members of the tax

shelter fraud conspiracy."). Thus, the Court denied Ruble's initial motion, concluding that the Ruble Evasion Counts were properly joined because "the defendant evaded taxes on funds received from other illegal activities charged in the indictment." *Stein*, 428 F. Supp. 2d at 143.

Since the Court decided Ruble's initial motion, the Second Circuit has warned district courts that "the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment." *United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008). In light of this warning, it is appropriate to consider whether, setting aside representations about what the evidence will show, the Ruble Evasion Counts are joined properly. Although the government argues that there is no need to reconsider the Court's previous decision, it agrees that the "Court should evaluate Ruble's motion solely on the face of the Indictment." DI 1326, at 7; Tr. July 29, 2009, at 11:16-24 ("[S]peculations about what unindicted coconspirators might or might not say were they to be called at trial is irrelevant."); Tr. July 29, 2009, at 12:5-6 ("[T]he evidence is not something that needs to be considered now.").

The government claims that the indictment, on its face, alleges that the side payments, a portion of which Ruble did not report as compensation, were generated by the conspiracy. Tr. July 29, 2009, at 10:24-11:22; DI 1326, at 6. The government urges that paragraphs 51 and 52, read together, make "clear[] . . . that the side payments from CC 10 were directly attributable to the SOS transactions alleged in the indictment." Tr. July 29, 2009, at 11:12-15.

The government's reading of the indictment is consistent with, but not required by, the text of the indictment. Paragraph 51 of the indictment alleges that "[m]any of the SOS transactions marketed by the defendants . . . were arranged and implemented by [the Shelter Boutique] . . . . The principal of the Shelter Boutique is a co-conspirator not named as a defendant herein ('CC 10')." Paragraph 52 alleges that

> "In addition to the fees collected by the Ruble Law Firm for the issuance of opinion letters on SOS and other tax shelter transactions, Ruble accepted side payments for his benefit from the Shelter Boutique and other entities controlled by CC 10. The CC-10-related side payments to Ruble totalled [sic] over $3 million. The CC-10-related side payments were not reported to the IRS by CC 10 or any entity controlled by CC 10, and Ruble failed to report to the IRS over $700,000 of these side payments. In addition, the defendants John Larson and Robert Pfaff caused nominee entities to make side payments to Ruble for his participation in tax shelter transactions. The Larson and Pfaff side payments totalled [sic] approximately $500,000, and they were not reported to the IRS by Larson, Pfaff, or Ruble, or by any entities controlled by Larson, Pfaff, or Ruble."

The government argues that the first sentence should be understood to allege that Ruble accepted side payments for the issuance of opinion letters on SOS and other tax shelter

transactions. This is not the only way to understand the sentence.[1] Even were the Court to adopt the government's reading, however, the indictment would not allege that all of the side payments were related to the conspiracy. The second and third sentences of paragraph 52 make clear that Ruble is alleged to have failed to report only a fraction of the side payments he received. There is no allegation that the unreported side payments were those that Ruble received for his SOS opinion letters rather than those received for his opinion letters on other tax shelter transactions.

With regard to the side payments made by Larson and Pfaff's nominee entities, the government admits that paragraph 52 does not allege explicitly that the side payments were for conspiracy-related tax shelter transactions. Tr. July 29, 2009, at 12:25-13:6. Rather, the government argues that, reading the indictment as a whole, these side payments should be understood as arising from conspiracy-related tax shelter transactions.

Although the indictment does not exclude the possibility that Ruble's unreported side-payments were related to the conspiracy, neither does it allege that the unreported income arose from the conspiracy. Unguided by an allegation of how the unreported income related to the conspiracy, the Court will not hypothesize about how they could be related. *See United States v. Mackins*, 315 F.3d 399, 413 (4th Cir. 2003) ("It is, of course, possible to hypothesize that [the defendant] used money generated through the counterfeit check scheme to set up new businesses that could then be used to launder drug money in the drug and money laundering conspiracy . . . . Alternatively, [the defendant] may have used the counterfeit check scheme to generate fraudulent bank accounts for his associates, which were then used to launder drug money. But neither of these possibilities (or any other) is explored in the indictment or in the testimony at trial . . . ."); *see also United States v. Ashley*, 905 F.Supp. 1146, 1164 (E.D.N.Y. 1995); *United States v. Castiglia*, No. CR-85-93E (JTE), 1986 WL 6873, at *10 (W.D.N.Y. June 18, 1986). Indeed, unbounded by a specific allegation of how the side payments furthered the conspiracy, the government has switched its theory of how the side payments allegedly relate to it. *Compare* DI 346, at 59, *with* DI 1326, at 8.

Read as a whole, the indictment does not imply, as the government suggests, that the side payments were part of the conspiracy charged in Count One. The government claims that the allegations in paragraph 52 "detail various acts of co-conspirators that furthered a single, overarching plot in which all defendants participated." DI 346, at 58. As discussed above, nothing in the text of paragraph 52 explains how the side-payments furthered the conspiracy. The only support for the conclusion that paragraph 52 alleges acts taken in furtherance of the conspiracy is the structure of the indictment – viz. paragraph 52 is under the Conspiracy Count heading. But, read as a whole, the structure of the indictment suggests that the side payments were not acts undertaken in furtherance of the conspiracy. First, the side payments are not included in the indictment's recitation of either the means and methods of the conspiracy or the overt acts taken in furtherance of the conspiracy. *See* Ind. ¶¶ 77-78. Second, the indictment does not charge all of the defendants

---

[1] Alternatively, the sentence could be read to allege, with regard to Ruble, only that he accepted side payments.

with Ruble's alleged evasion on the side payments. This is in contrast to Counts Two through Forty, which charge all of the defendants with the evasion that was the object of the conspiracy.

For the foregoing reasons, defendant Ruble's motion [DI 1320] for severance, pursuant to Fed. R. Crim. P. 8, of Counts Forty-one through Forty-four is granted.

SO ORDERED.

Dated: July 31, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)